All right. In that case, I will begin by introducing myself and my colleagues. I'm Justice Aurelia Puczynski. My colleagues, Justice Michael Hyman and Mary Ellen Kaplan, are joining me in the First Division of the First District of the Illinois Appellate Court for the Oral Argument on Case 2022, LAP 1-21-1651. We ask that you limit yourselves about 10 or 15 minutes on each side. The plaintiff of the appellate should reserve a couple of minutes for rebuttal. We try not to interrupt with too many questions, but if we do, try not to let you get off your track. Please remember that we've read the briefs, we've read the record, and we're familiar with the facts of this case. So just try to for the appellant. Please introduce yourself. Good afternoon, Your Honors. My name is Gail Weinberg Kalmin. I am arguing on behalf of the appellant today. Okay. And counsel for the appellee. Good afternoon, Your Honors. Jody Lawson from McGuire Woods on behalf of the defendants, Merrill Lynch, Pierce, Fenner, and Smith, Incorporated, and Sharon Overlander. Okay. With that, if you could begin with Ms. Kalmin. Yes. Hi. Good afternoon, and thank you to the court for taking time to hear more about this interesting case. And just for the record, Mr. Tobin, who is trial counsel, is here today. He's just not participating in the hearing. We're here today, as you know, because we seek reversal of the trial court's ruling that it made, which dismissed the plaintiff's claim and granted the defendant's motion to compel arbitration. I believe everybody here agrees that the review is de novo. And so we are seeking reversal of the why the ruling was made in error. And briefly, just to go over the three... Of all the... You make several arguments in your briefs. What is the major, the best argument? I mean, if there's one argument, I'm not saying that they're not... I'm saying maybe there's one that's better than the other. I mean, is there one that just... That's the one that should ruin the case for you? Well, I mean, I do believe that the question as to whether there was any mutual assent or any contract formed under basic Illinois contract law is clearly a resounding no. Well, it's not clearly because that's why we're here. It was really against you. So explain why, again, in your words, why when you signed the paper authorization, why isn't that contractually obligating you? Well, there's lots of reasons for that. But actually, although I do think that that is a winning argument in this case, I would be remiss if I did not first highlight to the court my belief and our contention that, as you know, the defendant has the burden coming forth on this motion. The burden is entirely upon them. And the first stepping stone that they must surmount, what I would call unlocking the door. Before you can open the door to arbitration, they must unlock the door. And the only way for a party to unlock the door to compel arbitration is to show the existence of an agreement between the parties for arbitration, right? They first have to show the existence of an agreement. And in our opinion, in my opinion, I believe it's pretty clear that they tried twice to do that and failed. Oh, wait, wait, wait. Let's start over. Okay. I don't think it's so clear. So let's agree that there could be a disagreement here. Of course. But when you say twice, you're talking about the affidavit or Ms. Williams, right? Two affidavits, yes. Well, okay. And so why should we take account of the second affidavit? I don't understand why that doesn't correct any error that may have been present in the first affidavit. Because she lacks personal knowledge as to the authenticity and legitimacy of the submissions that the defendant brings forth. What do you mean by that? Let's be more specific, because she does not lack knowledge with regard to the documents that Merrill Lynch keeps. So she can testify to that. And that's what she did. So I'm not sure I understood your argument. Okay. Well, so it's not that she doesn't... She claims she's familiar with the forms. I take her with that, just the forms themselves. But we don't need just the forms themselves. What the defendant needs to show is that the forms with my signature page attached represent are a true and accurate copy of a document that Merrill Lynch created in the ordinary course of business and maintained in the ordinary course of business. That knowledge is supposed to be based upon... Those attestations are supposed... The fact that the document with my signature page is a true and accurate copy of the WCMA account application with my signature attached is a true and accurate copy. That's what she says. In fact, in your opening brief on page 42, footnote 13, you say the documents attached to Ms. Williams' affidavits are neither sworn nor certified. But I read them and I see that they are... They're certified under 1-109 and independently of perjury. And in each of the paragraphs where she attaches a document, I'm looking at the second affidavit, she says a true and correct copy is attached here too as exhibit B. Same thing with C, D, E. So will you explain to me what footnote 13 is referring to when you say that neither were sworn or certified? Well, so the rule is actually not that the... Of course, the affidavit is signed under penalty of perjury and is sworn and certified, but the rule actually requires that the documents, the submissions attached to the affidavit are sworn and certified. She said that. That's what I read to you. She says a true and accurate copy is attached here too as exhibit D. Not that true and accurate copies of both the blank and included in this exhibit. And then she squares to it. What more does she have to do? Well, I think she needs... Give me a rule that says she has... Or a case that says she has to do more. Well, a couple of cases I can point out to you right away. The first one is U.S. Bank versus Avdic, which is cited in my brief, where the court highlights defects in an affidavit and the exhibits attached to it. And in that case, the court said that while the affidavit contained the boilerplate conclusory statements, the ones that you are specifically referring to, Your Honor, about which... But their boilerplate conclusory statements about which she testified at her deposition... No, I didn't read the whole affidavit. I didn't read the whole affidavit. The deposition. I'm not talking about... I'm talking about her affidavit. Yes. And I did not... You want me to read the whole... I don't have to read the whole thing for you. You're very familiar with this affidavit. But the affidavit says about her, who she is, her background, what she does, what she did, how she reviewed everything. She has that responsibility. This is a typical affidavit that is used in thousands of cases every day at the Circuit Court of Cook County. So I don't understand... That case you referred to, that's a different issue, different type of situation. How is this... Again, your footnote 13 says it was neither sworn or certified. That's what I said. The affidavits, the documents attached are neither sworn or certified. But that's not what the affidavit said. I don't deny that the affidavit says all sorts of things. The contention and the fact is that at her deposition, when she was asked questions about the attestations that she made in a sworn and certified, two sworn and certified affidavits, she admitted that she had no knowledge as to whether these were true and accurate copies of documents that Gail signed. She doesn't know. That was the first, relative to the first affidavit, but then that was corrected in the second affidavit, right? I'm talking about her deposition, where she was asked... No, you were actually talking about her affidavit. No, I'm sorry if I misspoke, but I don't question that her affidavit contains the requisite boilerplate language that all standard Supreme Court Rule 191 affidavits contain, but that's why we took her deposition. So you're agreeing that the second affidavit is... Okay, there's nothing wrong with it. No, I believe that both affidavits are false, because in the affidavit, she makes attestations, which when she was asked about them at her deposition, she admitted they were false. Ms. Kelman, I can tell that this is an emotional case for you, but could you just... I'm sorry, I'm just trying to explain... Write it down just a notch, please. ...that there's a difference between... I'm actually always like this, I apologize for that as well, but there's actually... The point is that the affidavits, while they appear on their face to be valid affidavits, no doubt that's why the defendant submitted them. That's why we took her deposition, as is frequently the case. And when you take an affiant and you depose them, and they admit at their deposition that they don't know whether the documents attached to the affidavit are true and original copies of the documents she claims were prepared in the ordinary course of business as her affidavit claims, then we have, I believe, a problem. The rule says that the affidavit, the submissions, if attached to the affidavit couldn't be admitted into evidence in a court of law, if the witness was on the stand being asked the requisite questions necessary to lay an evidentiary foundation for the submissions they seek to bring forth to the court for this consideration, then it won't be admitted into evidence. We've all been in trial where we've asked a witness to try to admit a document into evidence and the witness can't answer the questions adequately and sufficiently, and they lack personal knowledge. The other side stands up and objects to foundation and the document doesn't come into evidence. So it's one thing to present a document for identification. It's another thing entirely to have the document admitted as a piece of evidence for the court's consideration. And it is our contention that although her affidavits on their face appear to do the job of laying the foundation, the problem is that when Ms. Williams was testifying at her deposition, it revealed that the attestations in both of her affidavits are false. She doesn't have personal knowledge. Can you give us the citation to the record where she said that they're false? Well, she said that she does not actually know whether plaintiff executed the WCMA account applications as her affidavit claims. I cite that to... Well, but that has to do with your signature, which is not at issue. That's not the same as what she's saying. She's saying, I don't know about your signature, right? So that's different. So is there anything else? Well, I mean, that goes along with... That sort of feeds into the lack of mutual assent issue. No, well, that's a different issue. We're talking about the affidavit. But in any event, that's not what... That doesn't count as something that indicates that she doesn't have personal knowledge. You've already agreed in your complaint and you said many... That's your signature. You did sign it. That's not an issue. So what is it that she said that you're saying she denied? Is that the only thing? Well, no. Let me skip to another thing, which I think is very, very important here. So the basis upon which to admit these documents, these submissions, as the WCMA applications with my signature page attached to them, presumably is because they're a business record kept, that they were created in the ordinary course of business for Merrill Lynch. That is something that she cannot establish. There is no evidence, and I believe defendant even acknowledges that nobody ever met with Gail to go over these documents as Merrill Lynch admits is their standard ordinary course of business procedure. But that doesn't mean that the document... Of course, she never met with you. She is a document... A record keeper. Whether it's actually kept in the usual course of business, that's what she's testifying to. You tell me, what is it, the affidavit that is missing? What is it that you say the law requires her to say in that affidavit that isn't there? Well, what it said... The argument is not so much that it doesn't say that it's missing a requisite statement. The problem is that the statements she made are not at... She doesn't have personal... The purpose of Supreme Court Rule 191 is to make sure that a document before being admitted into evidence is the true and accurate copy of the document that the party is relying upon to bring forth their affirmative matter. It needs to be genuine and legitimate and not a manufactured document. Anybody can take a signature page and attach it to other documents. I realize that you're saying the U.S. Bank v. Abdick case is about a different issue, but in paragraph 19, they talk about how the affidavit contains the standard boilerplate language, but that the exhibits were incomplete, not sworn or certified, and that therefore the exhibits could not be admitted into evidence as business records. But that's not the case here. They are sworn... This is a different situation. Yeah, she's sworn to them. So that doesn't apply. So I'm still... I'm clear. She's somebody who keeps documents, okay? Again, there's thousands of cases every day in the circuit court in Cook County where people provide affidavits that these are the original documents and they're true and correct copies, okay? That's all she did. And I haven't heard you say one thing as to what she said in her deposition that would contradict what she said in her affidavit. Give me something. I mean, that's why I'm asking. Well, I didn't pull up her... I mean, I would have to pull up her deposition in front of me, quite honestly. Well, you wrote a brief, two briefs. Yes. No, no, no. I have it. You're very familiar with this case. Yeah, go ahead. Okay. So I do have it now. Hold on. Let me just get to the... First of all, the documents are incomplete. There are pages missing. She doesn't know why. There are pages out of order. She doesn't know why. The documents indicate that they are... Which affidavit are you talking about? The first or the second? I'm sorry? Which affidavit? The first one or the second one when you say that? Well, and that's another point is that she submitted two affidavits, both of which swear that the documents attached are true, accurate, and copies of the documents they're relying upon. The first one is not the case because it was simply a copy of my exhibit from my complaint. So... Well, that's why it wasn't. But that doesn't mean that the exhibits... As I understand the briefs, reading everybody's briefs, there isn't... I mean, tell me what the difference is between the exhibits that were attached. One was attached to your complaint, but what's... Give me one difference between what was attached to your complaint and what was subsequently attached to her second affidavit. Is there any substantive difference? What is it? Well, the substantive difference... The substantive difference is that there were hand markings and page numbers handwritten on the documents which have been removed. So the document, the second one, has been altered from the condition of the documents in July of 2019 when they were originally first provided to me. Since then... Well, so you're saying that the ones that she had attached that were sent to you... Well, the ones that were sent to you in 2019, is this what you're saying? Hand markings, is that correct? They had handwritten marks on them, which I... Okay, but those were copies. That was a copy, was it not? Well, they're all copies. No, but that was a copy. They had markings, okay. So how do you know they were removed? Did somebody testify that those markings were removed and what she attached in the second affidavit? Well, we don't know that, right? She doesn't know. No, but so what? I mean, that's not the issue. The issue is whether we have a copy of the complete document. We do not. Well, I don't know. She says we do, and you haven't given us any reason so far. Okay, so add her deposition. This is difficult to be reading her deposition and finding answers to your particular questions. I'm happily doing it, but it's difficult. So bear with me here. And I can't cite the page. I read it this morning. She was asked about the fact that the documents have page numbers on them indicating that there's something in the range of 137 pages, yet we only have 15 of those pages. So it is not a complete document. Well, wait, we're not. I'm not talking about. All we're talking about is you signed what was marked as page eight of a document. Is that document, as I understood it, was not a hundred and whatever number of pages. Right. There was a finite number of pages, okay. So for that particular exhibit, are you saying that all the pages weren't there? Or are you saying there were other pages beyond the document that the MCMA, I mean, that's what we're talking about, the MCMA for partnership. That's what you signed up, the signature page. So was that a complete document that was provided to you for the MCMA? Your Honor, I honestly can't answer that question because I am limited in my knowledge to what Merrill Lynch has produced in this case. Okay. I don't have access. You have nothing to contradict what she has said. Well, I see that the page numbers on there say page 15 of 137 and we don't have. Wait, 137, I mean, people number pages, people do other things. I mean, you say they gave you 137 pages and I mean, I'm not clear, you know, because, you know, I'm trying to pin you down because in your brief, I mean, you say things that are very broad in nature and then don't have any citations to back it up. Okay. Well, okay. I'm asking that. I'm trying to find out if the basis for you saying that we can not rely upon Ms. Williams's affidavit. Okay. Let me, I'm obviously not getting anywhere here. So let me jump to as I peruse her deposition and look for things that I can answer the various questions that you've posed. For example, she says on page 83 of her deposition that, you know, these, she admits that these forms were pulled by somebody else, that she didn't pull them from the system herself. She relied on other people to do that for her and it's pointed out and she admits that in paragraph six, there is no limiting language that these documents were pulled by somebody else. And she says, correct. She says, I was attesting to the records that were pulled and given to me and looking at those were the records that came from our file. But then she also says she was attesting that the records were pulled. So that's much different than attesting that these are true, accurate, and complete copies of the records contained in Merrill Lynch's system. What in your opinion would constitute, you clearly think that the foundation is insufficient. What would be satisfactory in your opinion that they have not done? In other words, what should the witness have testified to in order to pass muster? I think, I think somebody who can say, I went into the system, these are the documents and all the pages and the true and accurate, complete copy of the documents that were in Merrill Lynch's system. When they were entered into Merrill Lynch's system, I believe would be pertinent in this case, given the fact that the allegations and plaintiff's complaint is that these are manufactured, that this is a manufactured document that, that Gail, that I was tricked into signing a page. And then that page was subsequently attached to a huge array, a large volume of documents, not only the WCMA counter application, but also a booklet of another umpteen pages that is incorporated by reference and that those. So you're objecting to the reference that the documents were pulled by someone else. You think she should have pulled or retrieved or somehow gotten the documents herself personally, rather than having. Right. When, when she, right. Yeah. Well, that's part of it. I mean, she said I did not go into the computer system. She says that they were handed to me and pulled by her. Other than that, other than the fact that she's not personally going to the computer system and she claims the documents were handed to her. What else is deficient about the foundation? Well, I think that the problem with the foundation is that it's not a true and accurate copy of a document that I signed. All we have is that I signed. You've already said that. Anything else? Well, she didn't, she couldn't explain any of the discrepancies between the first set of documents that she swears was a true and accurate copy. And the second set of documents that she swears was a true and accurate copy. Mr. Tobin pointed out at her deposition that the second copy was missing. We've covered that ground. Okay. I mean, the burden on a, on an affidavit upon the party submitting the exhibits to the affidavit is the whole point is to prove that the documents are what the proponent claims they are. What it, what it, what it purports to be. And so there's a big difference between a true and accurate copy of a document or one that has been altered, manufactured, um, for the purposes of litigation. So when you have a document. Let me ask, just following along that line, if you do not win this argument, do you lose? If I don't win this? Uh, no, I, no, because, no, because I think the affidavit is admissible. No, like I said at the beginning, I'm sorry to I do believe that the, that the winning argument here among other things, there's a third, but the, the, the second, and I, I believe the winning argument is that if you, let's just say these documents that you guys don't believe that a sufficient foundation was laid and these submissions attached to her, her supplemental affidavit, um, can come into evidence. Okay, fine. Then there's a question as to how much weight to give them and how credible they are. I get that. Okay. But then you have a problem with, as I said before, this feeds into the mutual assent and the formation of a contract, which the courts, I mean, contract law is a very, not that complicated thing to prove just the formation of a contract. We need offer, acceptance, consideration to create a doc, a contract. We need mutual assent, assent to make the contract enforceable. And the courts have said in the Abergas case, they did a very good job of explaining that when a document you're signing is not obviously contractual in nature, as it, as the court found in that case, um, her ticket or the media, uh, pass that she had to enter the ballpark was not obviously contractual in nature. Then whatever she did that the defendant claimed was her mute, uh, uh, uh, evidence of her mutual assent to all the terms set forth in a website that she didn't even have access to the court said, well, that you can't do that because unless she knows at the time, she's, you know, there's cases where you're clicking a button on a website or you're, um, in most of these cases involve situations where the, where the plaintiff knows that they signed an agreement, right? The guy that you guys, uh, there was a recent case, I believe it was a judge case. Um, the name is hard to pronounce. It was the guy who came from Kansas to buy a very fancy Bentley car or something paid $98,000 for the car. So this was a May 20, 22 decision. I have the, the case number here somewhere. Um, he came to buy the car from the exotic car dealership, signed off on the papers to buy the car, gave them $98,000 and left. And oh my God, the poor guy, what, 50 miles down the road, the car just breaks down on the highway. So he sues for, for consumer fraud and whatever else he's suing for. And they say, well, there's an arbitration provision in these documents you signed when you gave us $98,000. So now like in most of these cases, that's the situation where the plaintiff knows they're signing a document. They just come back later and realize they didn't realize that this term was in there or it was in print. Let's talk about this case. You're an attorney and you it's, it's in your complaint that you say you're an attorney. Okay. So you sign a document and the document, you see a signature page. You have to know because you're, you're an intelligent attorney that this is part of something else. I mean, there's nothing else here, but a signature page, you know, it's a signature page, correct? I do see that it's a signature page. Yes. Okay. But you, I mean, you would have to. And if you look at it, it says on the bottom, page eight, which meant, you know, you know, if you, you sign something and when you sign something, the cases hold you to it. Even if you, if you look at, I looked at a lot of cases throughout the country and the law is pretty constant, that if you sign something and don't read it, when you have the, you know, you could have asked questions, you didn't. And you, if you look at the language on the left side of your signature about the partnership and so forth, and this is, you know, MCMA. I mean, there's, there's things here that would alert somebody you're signing your signature for something. I mean, you knew that you knew it. So why should the law for this case be any different than the vast majority? Sure. There's a couple of cases out there and whether distinguishable or not, we can discuss, but why should this case be treated differently when it is, as you can see, it's obvious that this is part of a bigger document. It does, it appear, I guess, from looking at the document, I should have known that there were eight pages, right? But it turns out there's like 200 and something. But some of them were incorporated by reference. I'm sorry? If you had read the seven pages. I didn't have seven pages to read. Well, Ms. Kelman, you signed a signature page that said, that alerted you to the fact that there were seven missing pages. Right. Seven missing pages included incorporations by reference. So if you had read those seven pages, you would have known about the other 127 pages or whatever it is. Plus the arbitration booklet. You didn't do that. You didn't ask any questions. You didn't say, hey, wait a minute, where are the other seven pages? That is, that is correct. And I believe, I believe that this is a fact that this gets to a factual question. You know, on a motion to compel arbitration, the courts have been very clear. The sole question before the court is whether an agreement to arbitrate exists. But you signed it. There is no question that I signed a blank signature page. Yes, I did. And there's no question that you didn't ask to read the other seven pages, which included the incorporation, the arbitration clause by reference. Okay. I, I, okay. There's, this is where we get to sort of the third argument, which is the fact that under Supreme Court, I'm sorry, under rule 2619A1, which is the section under which the motion to compel arbitration has been brought, requires the court to view the pleadings, take them, the well-pled allegations, which in this case, nobody claims, neither the court nor the defendant have alleged or claimed at any point in time that the pleadings, that the allegations set forth in my complaint, the whole basis of which is the fraudulent procurement of the signature. The, the, the court was supposed to take those allegations as true. And those allegations allege very, in very specific factual way, all of the factual reasons why this is different, right? My mother had recently passed away. I knew my mother had accounts at Merrill Lynch. My father had concealed from me that I succeeded her as a trustee to a variety of trusts. He can, and Merrill Lynch also. So in concert, they concealed from me. Nobody had ever contacted me to say, you succeeded your mother, and now you're in charge of these accounts at Merrill Lynch. You cannot relinquish something that you never knew you had. And so all of the facts and certain, he called me, you know, he called me on a, on a, in the middle of the day. And I knew he was wrapping up my mother's estate. I knew my mother had accounts at Merrill Lynch and he, he's my father. And, and I allege in my pleadings that he owed me a fiduciary duty, that we had a special and confidential relationship and that I was entitled to trust him. And the case law says that when a fiduciary engages in a transaction with you, that benefits him, it's presumed fraudulent. We're not talking about your father. No, but we're talking about the allegations. They did not, all your father sent it to them. They did not present this document to you. They did not make any representations to you. Why? Why? Well, you'll, you'll, you'll, you know, if you have to go to arbitration, you'll go to arbitration and for Merrill Lynch, because the non-inquiry as to the rest of the document, is that enough to pass muster under the law to hold you to the arbitration? That's the question of law before we have to decide. I'm sorry. Go ahead. It's now 1 36. You can have one more minute to wrap up and then we have to hear from the other side. Yes, of course. And thank you very much. I, I, first of all, there is no mutual assent in this case. Okay. There is no meeting of the minds. There is no way for me to know from signing the signature page. Even if I had asked for the first seven pages, I am actually looking at the first seven pages right now that this would tell me it doesn't say. I'm just reading here one through seven of the forms that the defendant has now provided to me. Don't say anything about arbitration provision. It does. It does. I think it's paragraph seven page before. No. Well, had I been provided with page seven, I, you know, well, but you just said it doesn't, but when I read the agreement and it does, so all you had to do is ask and it's right there on the page before this one. So if you said, dad, you sent me page eight, I want to see page seven, six, five. I understand that is the case before us. Okay. All right. I understand. I understand that. Okay. So in, let me just try to be quick here that in the case of Simon versus Wilson, I'm going to turn to that case because that's a very similar case where, where, where the father withheld information. He took over control of a trust without telling the people who were supposed to have control. It's factually a little bit similar. And in that case, the court also talked about the inhibition of inquiries, right? So this is my father. You don't know your father, my father, but I do. And I can tell you that, you know, I mean, I don't remember what he told me when he called me and asked me to sign these pages. I believe in my recollection is that he said something to the effect of, I need these signed to wrap up your mother's estate, which is a lie. My allegations in my complaint are supposed to be taken as true. I not only allege in my complaint that my father owed me a fiduciary duty, but I allege that Merrill Lynch owed me a fiduciary duty because I was their client. I didn't know it, but I was their client. And under Illinois law, it is very clear that there is a duty to speak and the failure to speak when you have a duty to speak is the same in your fiduciary, which we have to take as true for purposes of this motion. The failure to speak is an actual misrepresentation. Okay. I just want to ask one question really that we've got to wrap it up. Okay. Between the day your mother died on August 20th, 2015 and May 11th, 2016, when you signed this last page, you're telling us that you were a client of Merrill Lynch's on these accounts. No, I actually, that is something that I need to correct. It's been pointed out to me by the defendant that there is one small portion of my complaint that turns out I made a mistake. I think this is what you're referring to. There's allegations, it might even be in my brief, but I found out subsequently it was clarified for me that my personal relationship with Merrill Lynch and Sharon Oberlander did not commence until after May 11th, 2016, which I believe actually in yours against the defendant, because I didn't know what a WCMA account application was. So I did not know. Okay. But that answers the question. You're signing something. You didn't know what it was. Whatever my father told me it was. I don't think we can go much farther with this. With that, I'm going to ask Ms. Lawson to start, please. Thank you for your time. May it please the court. I can see that your honors has a very familiarity with the record here. So I'm going to try to address a couple of key points. First, we do believe it's appropriate that this court affirm the decision of the trial court that granted the motion to compel arbitration and required the appellant to arbitrate her disputes with Merrill and with Sharon Oberlander. As your honors have noted, she is a practicing attorney. She's a member of the bar of this court, and she did sign her name 13 separate times, thereby binding her to arbitrate her dispute. And one important point, I think argument number two, that I don't really believe I saw much of a response to is that even setting aside the agreement that we believe or that plaintiff signed and that we believe controls here that requires her to arbitrate, appellant would still be required to arbitrate her claims because when these accounts were opened back in the 1990s, the account holders agreed to arbitrate all disputes with Merrill. And so I just want to spend just a few minutes to make sure that we understand the landscape here, which is that these accounts are owned by two Illinois partnerships, AC and Associates and AJW partnership. The appellant's parents, Alvin and Cecil Weinberg, opened these accounts in 1994 for AJW and 1999 for AC and Associates. And these partnerships are owned by trusts, and obviously the trustees are the individuals that sign authorizations and provide documents to Merrill. They did that in the 1990s when they opened this account. And very importantly, when they opened these accounts, not only were they subject to a mandatory arbitration provision, but also very importantly, the account agreement made clear that if a partner died or withdrew, it was the duty of the partnership to promptly notify Merrill and to update the authorized individuals on the accounts. That can be found at the record C-1002 and C-1019. So your argument, just to make sure I understand what you're saying, is whether she signed the agreement or not, the arbitration agreement that was originally made between the partnerships and Merrill would continue. Even if she refused to sign, the fact is that the partnership still had to arbitrate any dispute with Merrill. Is that your argument? Yes, Your Honor, that's correct. I believe that the court has all of the evidence that need just like the trial court did to affirm that the appellant signed the contract. She knew what she was signing. She knew it was going to be presented to and relied upon by Merrill. But you don't even have to reach that question. And really, the entire argument and the fact that we're here today on this is all a red herring because when these accounts were opened in the 1990s, the basis upon which these accounts were opened were the agreements signed by the New York Choice of Law Provision that was required. Without getting into the Choice of Law Provision right now, but you're also saying that the arguments with regard to the affidavits from Ms. Williams is irrelevant because whether it is or it isn't, the fact is that it was the partnerships we're talking about, and instead of the partners, she's a trustee, so she's not a direct, she's indirect. That's exactly right, Your Honor. And it's even two more steps removed. She is the trustee of trust that owns the partnerships. And it is black letter law, it's cited in our brief, that Merrill does not owe any fiduciary duties to the account holders, to the partnerships here. And not only is she not an account holder, she is two steps removed from that. It's black letter law that there are no fiduciary duties at all owed to her whatsoever. I would like to briefly address the affidavit, Your Honors. I believe Ms. Williams' affidavit, for the identical reasons that Your Honor pointed out, she testified that those documents were pulled from Merrill Lynch's internal systems. She authenticated the documents. They were true and correct copies. And Your Honor, these documents, we've detailed this in the brief, but there was a mistake at my office where the documents that were attached to the plaintiff's complaint were mistakenly included in the first declaration, and we corrected that. There is no substantive difference between any of the documents. All of the account agreements substantively say the same thing. And this, frankly, is a distraction from the matters at heart here. I would also like to briefly address the fraud claims, the fraud in the inducement and fraud in the execution claims. These issues were raised for the first time on appeal. So under Illinois law, those have been forfeited. But even if the court does look to the merits, we've just detailed in our brief details that there are absolutely no fiduciary duties that were owed to the partnerships, much less any sort of fiduciary duty to speak. I appreciate that the appellant has clarified that she was not an individual customer at Merrill at that time. And so Blackletter Law, but even if she was, Merrill still wouldn't owe any fiduciary duties to her because it's Blackletter Law that a neutral custodian of accounts, like Merrill in this case, is the custodian of brokerage accounts. And these are self-directed accounts where in order to buy and sell securities in the accounts, the customer has to provide express authorization for any purchases or sales. And so under those facts and circumstances, which is exactly what we have here, the neutral custodian of those brokerage accounts must take instructions from authorized individuals on the account. And there are no fiduciary duties that are owed to the customers here, which are the two partnerships, AC and Associates, and AJW, and of course, not the appellant individually. And moreover, Your Honor, even if there was a duty to educate Ms. Coleman about her status as a trustee, which we have pointed out already is completely backwards, the partnership actually had a contractual duty to inform Merrill promptly if general partners either passed away or moved on or needed to be updated. But plaintiff's status, excuse me, the appellant's status as trustee was apparent on the face of each of the 13 pages that she signed. And I can see that Your Honor has looked at those documents, but looking at them really is telling because on most of those forms, there are two people that are signing the form. So in some places she had to sign on the top line, Gail Coleman, trustee. On some of the forms, she had to sign on the bottom line, Gail Coleman, trustee. And all of those forms very clearly stated that she was signing in her capacity as trustee of a trust. Those documents clearly- And the reason for that is because TTEE is next to her name. That's exactly right, Your Honor. TTEE is a common designation for trustees. Trustee, okay, let me ask about something she says in a reply brief. They say defendants know that they attached Gail's signature to the forms without her knowledge of consent. They do not deny any of these things. Defendants failed to establish, so forth. Defendants know the WCMA forms with Gail's signature attached to them were fabricated in furtherance of a fraudulent scheme. Now, my first question is those statements, to the best of your knowledge, are they made in the complaint? No, Your Honor, they're not. And again, this is exactly what I pointed out when addressing her fraud arguments is that was not alleged in the complaint. She hasn't alleged in her complaint. She didn't argue it before the trial court. And it is not proper to be arguing issues like this before this court in the first instance. As a matter of law, the court should merely just deny and ignore these arguments because they're not appropriate. Your Honor, Your Honors, I realize that we have gone a little bit over in terms of time, but I think I would just like to, if there, unless there are any other questions, I would like to wrap up by saying, number one, that I think the trial court got this correct. He found that the appellant signed the agreement. She had every opportunity to ask to see the full document. As Your Honor pointed out, page seven clearly indicated that there was a mandatory arbitration provision. And as an officer of the court and as the lawyer and as a sophisticated individual, the appellant had a duty of inquiry. And there's black letter law, which Your Honor has also pointed out that you are bound by what you sign. So I believe that on this record, the court should affirm the decision of the trial court judge. If for some reason, this court has any question about the agreement that Ms. Kalman undoubtedly signed and agreed to that binds her to arbitrate. Nevertheless, the court could also still affirm because when these accounts were that required arbitration of all disputes and plaintiff has acknowledged that she has received the benefit of these accounts over the years, she doesn't deny that. And because she receives the benefit of these accounts being held at Merrill, she is also bound. And because she's suing on the very accounts that are subject to a mandatory arbitration provision there, no matter which way you slice it, Your Honors, plaintiff is bound to arbitrate her dispute here. The issues regarding the affidavit, I believe are just a distraction from really the key issues here. And with that, I would respectfully request the court to affirm the trial court decision granting the motion to compel arbitration and require that this dispute between the appellant and my clients, Merrill Lynch and Sharon Oberlander be compelled to arbitration. Thank you. Any questions? Justice Hyman? Justice Coughlin? I have none. Hearing none. Ms. Kalman, you have about five minutes for rebuttal. Okay, thank you, Your Honor. Let me just hit up a couple points that Ms. Lawson made in her argument. Number one, Ms. Lawson's argument that I should somehow be bound by the WCMA account forms and arbitration provision that were contained in the 1994 version of these forms that my parents signed when my mother, and not I, was a trustee. I believe that the case of where they're the, it was a Merrill Lynch case where they were trying to bind a beneficiary, a trust beneficiary, to the terms of an agreement or a contract that the trustee, not the beneficiary, had signed. And they're very specifically held that a trustee is not an agent for a beneficiary and has no ability to bind the beneficiary to the terms of anything that the trustee signs unless the beneficiary's name is specifically referenced in the document as being bound or that the party signed it. Because as we know, you can't be bound by an arbitration provision that you didn't enter into. So in that case, the court said you can't bind a beneficiary, which I was in 1994, to the terms set forth in agreement that a trustee, not the beneficiary, signed and which does not expressly bind the beneficiary. And there's no allegation here. And Ms. Williams confirmed at her deposition that my name is not mentioned in those documents. It doesn't expressly bind me in those documents. So I don't believe that argument has any merit whatsoever per Schmitz v. Merrill Lynch. So with regard to Schmitz v. Merrill Lynch, I just did a fast check of your opening brief. And you do cite the case at page 28. But you cited for the standard of review, Schmitz v. Merrill Lynch. I don't see it anywhere in your brief where you make the argument you just made. Am I incorrect? No. The reason I didn't make it in my opening brief is because the court's ruling, in making its ruling, the court made absolutely no mention of this argument, did not give it any consideration whatsoever, and there's no indication from the court's ruling that that was a basis of its... But if it was good for you, which is what you just said, you would have thought that you would have cited it to say, this is a reason we should rule in your favor, but you haven't. So I'm just saying that since you never raised that issue, even before us, so that the other side could consider it and respond under the rules, we can't consider it. Well, it is referenced in my footnote, and the case is cited in my brief, and the case is dispositive of that. What footnote? All I see in page 28 of your opening brief. On page 18 of my opening brief, footnote number five says plaintiff's response also addressed the defendant's theory, for which they cite only New York law that Gail should be bound by the terms of the WCMA account application her parents signed in 1994. Yeah, but it's nothing about Schmitz there. That's my point. My point is you didn't raise... I don't cite Schmitz for the argument, but what I... No, but you can't consider it, and you're saying that's a reason we should rule in your favor. I'm just saying as a matter of appellate law, we can't consider it because you didn't give the other side an opportunity by raising it in your opening brief, even if it had been brought below. Okay, well, I mean, I don't believe that under contract law you can bind me to an agreement that I wasn't a party to. I mean, I can't bind you to this agreement either. It's the same thing. I mean, to me, it doesn't even seem... How do you bind somebody to a contract that they didn't enter into? Would you like to be bound by these WCMA account agreements? It would be the same argument. But you're saying that you are the partnership and you're not. I've never said I was the partnership. Therefore, the agreement, as I understood the argument from your opponent, was that this back in the early 90s, there's a difference between trustees and the partnerships. That's correct. We're talking about the trustees. Right. I am a trustee of a family of... I'm a trustee of every single trust that makes up AJW partnership, and I was not that in 1994. It doesn't matter because you have to understand we're talking about the partnerships. It's different than the trustees. I'm not going to answer any of your questions, but I'm just saying to you to understand that in law, there's a difference between a partnership like this and the trustees, and you know that. I do, but a partnership is not a human being. It's governed by its partners. And the partners in this particular partnership, which I did not create, is set up such that the trustees of the trusts, the trusts are the partners in the partnership. And the trusts are run... It's an onion, no doubt. And I believe that that was done for a reason. But notwithstanding that, I mean, I get your point that I did not make the argument in my brief. I didn't... I noted the reason why I didn't make the argument in my brief and the case that stands in opposition to the argument, even though it's not cited for that particular argument because the court gave no indication that it was ruling on that basis. And it was not a basis of the court's ruling. So it's not up on appeal. The court didn't make any finding with regard to the 1994 or 1999 contracts. The judge specifically ruled that Gail signed this signature page and that created a contract. That was the court's ruling. So, I mean, I can't be raising things on appeal that are not part of a court's ruling. So that's the reason it was left out. And as I said, the case that stands against that argument is cited in my brief. So I would hope that the court would give that its consideration. Ms. Kalman, would you like to wrap it up, please? Well, I didn't even give my reply. I was just answering questions. But I would also, you know, as for the claim that... I said this in my brief, that fraud was raised for the first time in appeal. I mean, 2619 says you have to take the pleadings in my complaint as true and they must be considered. And fraud is the entire basis of the litigation here. And counsel, again, repeats that I'm bound by what I sign. And that gets back to what did I sign? I signed a piece of paper that had a page number on it and said nothing about it being a contract, said nothing about terms and conditions, said nothing about it being an agreement, said it didn't say I agree or I'm hereby bound. It is not obviously contractual in nature. And although maybe I should have asked for the first seven pages, maybe I did. And my father said, oh, don't worry, blah. I don't know what he said on the phone before he sent me this document to sign. It's not the first time he's tricked me into... He took advantage of me and tricked me into signing things. This was the last time he tricked me into signing things. But the problem is that whether I had a duty... If you say I had a duty of inquiry, I think that first of all, the burden is on the defendant. Second of all, whether I made an inquiry or whether I should have done this, that, or the other, those are questions of fact that are not properly addressed on a motion to compel arbitration. The sole question before the trial court is, does an arbitration agreement exist between these two parties, which precludes the 1994, because I wasn't a party to that agreement. And the sole issue on review before this court is whether the submissions provided to the trial court were sufficient to overcome, for the defendant to meet its burden. And I think that under the specific facts and circumstances of this case, which are very clearly and specifically delineated in my complaint, and which must be not only taken as true, but viewed in a light most favorable to the plaintiff, that it's inappropriate to be deciding questions of fact at a motion to compel arbitration, especially in this highly unusual case where the underlying allegation is that the very signature upon which Merrill Lynch is relying in order to suggest that I have to be compelled to arbitrate my claim is alleged to be the product of fraud and void ab initio. So for the court to find as a matter of law, given those underlying allegations, which must be taken as true, for the court to find as a matter of law that my signature validly legally binds me to a contract is exactly the opposite of what is pled in the allegations that are supposed to be taken as true. The court also made two other findings. He found that my reliance was unreasonable. And in my complaint, I specifically alleged not only that my reliance was reasonable, but all the reasons why my reliance upon my father was reasonable. And the court further found that Merrill Lynch's reliance on my signature was reasonable. My reliance on my father was unreasonable. Merrill Lynch's reliance upon my signature was reasonable. Those are definitely factual questions that are not before the court on the motion to compel arbitration, and which fly directly in the face of the allegations made in the complaint, which are, again, to be taken as true. So I think that's, I would ask that the court reverse the court's ruling. There was a jury demand in this case. And I believe that the questions of fact that are alleged in my complaint should be properly put before a jury. Maybe a jury will find that I was unreasonable in relying or that this is a contract, but those are questions of fact that I believe a jury and not the trial court on a motion to compel arbitration should be summarily making before there's been any discovery at all. Thank you very much for your time. Ms. Lawson, we thank you both for your oral argument, for your briefs. We will take this case under advisement and enter an order or an opinion forthwith. That being said, this court is adjourned. Thank you.